United States District Court
For The
District of Vermont

In re:                            :
                                  :
Tammy J. Cusson, et al.,          :
                                  :
        Debtors.                  :
_____ :
                                  :
James A. Naylor d/b/a Naylor      :
Construction,                     :
                                  :
        Appellant,                :
                                  :
            v.                    :    Docket Nos. 2:08-cv-057
                                  :                2:08-cv-058
Tammy J. Cusson and Dorothy       :
Ducharme,                         :
                                  :
        Appellees.                :


**<u>Opinion and Order</u>**

        The appellant, James A. Naylor d/b/a Naylor Construction

("Naylor") appeals from two orders of the United States

Bankruptcy Court for the District of Vermont (Brown, J.).  This

case is a consolidation of those two appeals.[1]  The first order

entered on January 17, 2008 granted the Debtors' motions to re-

open their respective bankruptcy cases.  (Doc. 25.)  The second

order entered on July 21, 2008 granted the Debtors' motions to

avoid Naylor's lien.  (Doc. 61.)

---

[1] There are two bankruptcies at issue in this case. The appellees, Tammy J.
Cusson and Dorothy Ducharme (collectively the "Debtors"), are partners who
individually filed bankruptcy petitions. Tammy J. Cusson's Chapter 7 case is
Bankr. No. 06-10195. Dorothy Ducharme's Chapter 7 case is Bankr. No. 06-10154.
All citations contained herein refer to the docket entries in Tammy J.
Cusson's cases.

In his appeals, Naylor argues, in short: (1) that the Bankruptcy Court abused its discretion in re-opening the Debtors' bankruptcy cases; (2) that the Bankruptcy Court incorrectly construed Vt. Stat. Ann. tit. 9, § 1925 while determining that Naylor's contractors' lien was not valid; (3) that the Bankruptcy Court erroneously considered facts that did not exist at the time the Debtors filed their bankruptcy petitions; and (4) that the Bankruptcy Court incorrectly concluded that the Debtors lawfully refinanced their property even though it was subject to Naylor's contractors' lien.  (Br. Of Appellant 11-20.)

The Bankruptcy Court's decision granting the motion to re-open lacked finality, and Naylor's first appeal from it must be dismissed for lack of jurisdiction.  Naylor's second appeal, consolidated with the first appeal, addresses both the decision to re-open the bankruptcy cases and the decision granting the lien avoidance.  Both decisions are **affirmed**.  Naylor's pending motions for stay are **dismissed** as moot.

## Factual Background

The following facts are undisputed unless otherwise noted. The Debtors jointly own a homestead property located at 21 Clifford Street, Winooski, Vermont.  On April 1, 2004, the Debtors contracted with Naylor to replace the concrete foundation supporting their home.  Shortly thereafter, Naylor performed most of his obligations under the contract, but the Debtors disputed

the amount due under the contract and the quality of some work
that Naylor had performed.  On September 28, 2004, Naylor filed a
Notice of Contractors' Lien ("lien") dated September 27, 2004
against the Debtor's property and recorded it in the Winooski
land records at volume 158, page 173.  In order to perfect his
lien, Naylor sued the Debtors in Chittenden County Superior
Court, Docket No. 142-05-CnC, for breach of contract and damages
under Vermont's Prompt Payment Act ("VPPA"), Vt. Stat. Ann. tit.
9, §§ 4001–4009 (2006).  On March 25, 2005, Naylor obtained a
Writ of Attachment and Order of Approval of Writ of Attachment in
the amount of $20,000.00.  Naylor promptly recorded this Writ in
the Winooski land records at volume 162, pages 210-213.

On April 22, 2005, the Debtors refinanced 21 Clifford Street
and granted a mortgage for $184,800.00 to Aegis Lending
Corporation ("Aegis").  Aegis recorded this mortgage in the
Winooski land records at volume 163, pages 341-355.  The Debtors
placed $20,000.00 from the refinance proceeds into escrow in
order to satisfy Naylor's Writ if ever enforced.  At this time
the Debtors' property had an existing $6000.00 mortgage dated
June 12, 1997 in favor of the Vermont Housing and Conservation
Board ("VHCB").  The VHCB mortgage is recorded in the Winooski
land records at volume 111, page 37.

On February 22, 2006, Naylor obtained a Judgment Order
against the Debtors' attached property.  The Superior Court

awarded Naylor $42,594.92 plus interest and penalties:
$25,000.00 due under the contract, $2210.00 in consequential
damages, and $15,373.92 in attorney's fees and costs. The
judgment included statutory interest at a rate of 12 % per year
and statutory penalties accruing at 1 % per month from August 21,
2004 through February 22, 2006. To date, Naylor has not recorded
this judgment in the Winooski land records.

The Debtors appealed from Naylor's judgment to the Vermont
Supreme Court on March 23, 2006. A few weeks later, on April 13,
2006, the Debtors individually filed Chapter 7 bankruptcy
petitions. As a result of these bankruptcies, Naylor was
prevented from taking any action to enforce his judgment pursuant
to the automatic stay provision of 11 U.S.C. § 362(a)(2).
Thereafter, on May 16, 2006 Naylor moved the Bankruptcy Court for
relief from the automatic stay to perfect his lien. (Doc. 9.)
The Bankruptcy Court granted Naylor relief from stay on June 13,
2006. (Doc. 14.) During the pendency of their bankruptcies, the
Debtors moved to avoid Naylor's lien but voluntarily withdrew the
motion. On August 7, 2006, the Bankruptcy Court issued an order
discharging the Debtors' bankruptcy cases. (Doc. 17). Two weeks
later, the Bankruptcy Court issued a final decree closing the
Debtors' bankruptcy cases. (Doc. 19.)

On September 18, 2007, the Vermont Supreme Court affirmed
Naylor's February 22, 2006 judgment in *Naylor v. Cusson (Naylor*

4

*I)*, 940 A.2d 717 (Vt. 2007) (mem.).  Thereafter, Naylor requested

that the Chittenden County Superior Court issue a final judgment

order including post-judgment attorney's fees under the VPPA.

This motion was denied on July 16, 2008.  Naylor appealed from

this denial to the Vermont Supreme Court, and the Vermont Supreme

Court affirmed the Superior Court's denial in an unpublished

entry order.  *Naylor v. Cusson (Naylor II)*, No. 2008-327, 2009 WL

426429, at *1 (Vt. Feb. 4, 2009).

Meanwhile, on November 29, 2007, the Debtors moved the

bankruptcy court to re-open their respective Chapter 7 cases.

(Doc. 21.)  They concurrently moved to determine the secured

status of Naylor's lien, and alternatively, to avoid Naylor's

lien ("lien avoidance motion").  (Doc. 22.)  Naylor opposed both

of these motions.  (Doc. 23.)  After hearing arguments, the

Bankruptcy Court re-opened the Debtor's cases on January 18,

2008, and reserved ruling and argument on the lien avoidance

motion.  (Doc. 25.)  Naylor appealed from the order which re-

opened the bankruptcy cases directly to this Court on January 25,

2008.  (Doc. 27.)  A few months later, the Bankruptcy Court

issued an order and memorandum of decision granting the lien

avoidance motion dated July 21, 2008.  (Docs. 60 & 61.)  Naylor

then appealed from this order directly to this Court on July 28,

2008.  (Doc. 67.)[2]  On August 4, 2008, Naylor filed an emergency

---

[2] The second appeal, docket no. 2:08-cv-181, was consolidated with 2:08-cv-057
and closed on September 30, 2008.

motion for stay of the Bankruptcy Court's July 21, 2008 order
with this Court, which was denied without prejudice on September
2, 2008.  On October 10, 2008 Naylor renewed his emergency motion
for stay of the July 21, 2008 order pending his appeal to this
Court.

## Discussion

Section 158(a) of Title 28 gives this Court jurisdiction to
hear an appeal from a final order of a bankruptcy court from the
District of Vermont.  28 U.S.C. § 158(a); *see also* Fed. R. Bankr.
P. 8001(a).  However, an appellant may only appeal from an
interlocutory order with leave from the bankruptcy court.  *See*
Fed. R. Bankr. P. 8001(b); 28 U.S.C. § 158 (a) (3).

A bankruptcy court's decision to re-open a bankruptcy case
will be upheld absent an abuse of discretion.  *State Bank of
India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1307 (2d Cir.
1996).  This Court will affirm a Bankruptcy Court's "factual
findings unless clearly erroneous" and review its legal
conclusions regarding lien avoidance *de novo*.  *Id.* at 1306
(citing *Bethpage Fed. Credit Union v. Furio* (*In re Furio*), 77
F.3d 622, 624 (2d Cir. 1996)); *see also* Fed. R. Bankr. P. 8013.

## I.

With respect to Naylor's first appeal, this Court lacks
jurisdiction to consider its merits because Naylor did not follow
requisite appellate procedure in bringing it.  Naylor appealed

from the order directly to this Court.  However, at the time
Naylor brought his first appeal, the order from which he appealed
was interlocutory and not final.

A final order "finally dispose[s] of discrete disputes
within the larger case."  *Shimer v. Fugazy* (*In re Fugazy
Express*), 982 F.2d 769, 775 (2d Cir. 1992) (citations omitted);
*In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir. 1989)
(noting that while the concept of finality in bankruptcy matters
is more flexible than in ordinary civil litigation, a final order
is one which "finally disposes of discrete disputes within the
larger case.") (citations omitted).  Additionally, a final order
"ends the litigation on the merits and leaves nothing for the
court to do but execute the judgment." *Caitlin v. United States*,
324 U.S. 229, 233 (1945) (citing *St. Louis I.M. & S. Ry. Co. v.
S. Express Co.*, 108 U.S. 24, 28 (1883)).

Here, the Bankruptcy Court's order granted the Debtors an
opportunity to request a determination of the lien's secured
status or, alternatively, to avoid the lien altogether.  The
order did not determine the lien's secured status, permit the
Debtor's to avoid the lien, nor end the litigation on the merits.
Rather, the order provided the Debtor's an opportunity to
litigate on the merits.  Because the order was not final Naylor
should have requested leave from the Bankruptcy Court to appeal

from it, but he did not.  Therefore, Naylor's first appeal is
dismissed.

With respect to Naylor's second appeal this Court reviews
the Bankruptcy Court's decision to re-open the Debtors'
bankruptcy cases for plain abuse of discretion.  *In re Chalasani*,
92 F.3d at 1307; *see also In re Perlman*, 116 F.2d 49, 50 (2d Cir.
1940).

A bankruptcy court has the discretion to re-open a
bankruptcy case "to administer assets, to accord relief to the
debtor, or for other cause."  11 U.S.C. § 350(b).  However, a
bankruptcy court's decision to re-open a bankruptcy case is
subject to equitable defenses, such as laches.  *See* H.R. Rep. No.
595, 95th Cong., 1st Sess. at 338 (1977); S. Rep. No. 989, 95th
Cong., 2d Sess. at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N.
5787, 5835, 5963, 6294.  A timely filed lien avoidance motion
under 11 U.S.C. § 522(f)(1) has been held sufficient cause for
re-opening a bankruptcy case under 11 U.S.C. § 350(b).  *Matter of
Caicedo*, 159 B.R. 104, 105-06 (Bankr. D. Conn. 1993); *see also
Blake v. Ledan (In re Blake),* 38 B.R. 604, 609 (Bankr. E.D.N.Y.
1984) ("Lien avoidance constitutes sufficient cause to reopen a
case.").

Additionally, neither section 350(b) nor Bankruptcy Rule
5010 limit when a section 350(b) motion must be filed.  11 U.S.C.
§ 350(b);  Fed. R. Bankr. P. 5010;  *cf. Harris v. Warshawsky*, 184

F.2d 660, 662-663 (2d Cir. 1950) (permitting a motion to re-open even after a lapse of 12 years). Another provision, Bankruptcy Rule 9024, specifically exempts section 350(b) motions from the one-year time limitation imposed by Federal Rule of Civil Procedure 60(c)(1) for motions to obtain relief from a judgment order. Fed. R. Bankr. P. 9024; *Matter of Caicedo*, 159 B.R. at 106-107. Neither sections 506(d) nor 522(f)(1) of the Bankruptcy Code (the substance of the lien avoidance motion) impose time limitations. *See* 11 U.S.C. §§ 506(d), 522(f)(1). Therefore, a bankruptcy court may grant a section 350(b) motion to re-open a bankruptcy case for the purpose of hearing a lien avoidance motion subject to the defense of laches.

The Bankruptcy Court re-opened the Debtors' bankruptcy cases for sufficient cause—to hear the lien avoidance motion. *See Matter of Caicedo*, 159 B.R. at 105-06. However, Naylor argues that he was entitled to the defense of laches and that the Bankruptcy Court abused its discretion in denying him that defense.

"Laches is the failure to assert a right for an unreasonable and unexplained period of time when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right. Laches does not arise from delay alone, but from delay that works disadvantage to another." *Stamato v. Quazzo,* 423 A.2d 1201, 1203 (Vt. 1980)(citation omitted).

Naylor alleges that he is entitled to the defense of laches because the Debtors created the delay which unfairly prejudiced him. (Br. Of Appellant 18-19.) Specifically, Naylor argues that the Debtors initially made a lien avoidance motion in bankruptcy court, and then withdrew it; and after such withdrawal, Naylor sought relief from the automatic stay provision of 11 U.S.C. § 362 (a) (2) in order to defend his judgment in the Vermont Supreme Court. Then, after losing on appeal, the Debtors re-opened their bankruptcy cases to re-consider their previously withdrawn lien avoidance motion thereby forcing Naylor to defend his lien yet again. As a result of this delay, Naylor claims prejudice.

Naylor's argument is mistaken. Naylor's actions gave rise to the delay which he claims prejudiced him. Naylor did not have to request relief from stay to perfect his contractors' lien. An intervening bankruptcy does not automatically stay the post-petition perfection of a statutory lien that was already in existence at the time the bankruptcy petition was filed. *See Town of Colchester v. Hinesburg Sand & Gravel, Inc*. (*In re APC Const., Inc*.), 112 B.R. 89, 108-16 (Bankr. D. Vt. 1990) (stating that the post-petition perfection of an inchoate statutory lien that came into being prior to the date of petition is not subject to the automatic stay provision of the Bankruptcy Code). Naylor's request for relief from stay permitted the Debtors to

continue their appeal in the Vermont Supreme Court.  Regardless

of the delay the appeal may have created, it was Naylor's failure

to perfect his lien that delayed the Debtor's from arguing the

merits of their lien avoidance motion as well as provided them

with a factual basis to re-open their bankruptcy cases to do so.

The maxim "[e]quity helps the vigilant, not the dormant," applies

with great force here.  *Philbrick v. Johnson*, 100 A. 110, 112

(Vt. 1917).  Naylor created the delay which he now claims

prejudiced him, and he was not vigilant, but dormant, in

perfecting his lien.

Additionally, Naylor argues that the Bankruptcy Court was

required to, but did not, make an affirmative finding that Naylor

would not be prejudiced before it re-opened the Debtors'

bankruptcy cases.  (Br. Of Appellant 19.)  However, Naylor

carried the burden of factually establishing his affirmative

defense of laches.  *See* Fed. R. Civ. P. 8© (stating that the

defense of laches must be affirmatively pled by the party relying

on it); *see also Preston v. Chabot*, 412 A.2d 930, 931 (Vt. 1980)

("Laches is an affirmative equitable defense, and the burden is

on the party relying on it.").  The Bankruptcy Court did not have

to make an affirmative finding of non-prejudice.  *Preston,* 412

A.2d at 931.  "(L)aches is so much a matter of discretion by the

lower court that action by that court should not be disturbed

unless clearly shown to be wrong." *Laird Props. New England Land Syndicate v. Mad River Corp.*, 305 A.2d 562, 570 (Vt. 1973).

The Bankruptcy Court re-opened the Debtors' bankruptcy cases for a permissible purpose (to afford the Debtors relief by way of hearing their lien avoidance motion). Furthermore, the Bankruptcy Court was not required to make an affirmative finding of non-prejudice before re-opening the Debtors' bankruptcy cases. The burden of establishing prejudice rested with Naylor. Accordingly, the Bankruptcy Court did not abuse its discretion in re-opening the Debtors' bankruptcy cases.

## II.

The existence of statutory contractors' liens and judicial liens that affect real property are questions of state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Property rights in the assets of a debtor's estate are determined by state law. *Morton v. Nat'l Bank of New York City (In re Morton),* 866 F.2d 561, 563–64 (2d Cir. 1989). This Court will apply Vermont law, Vt. Stat. Ann. tit. 9, §§ 1921–1925 (2006), to determine the validity of Naylor's contractors' lien. *See, e.g.,* *Kors, Inc., v. Howard Bank* (*In re Kors*), 819 F.2d 19, 22 (2d Cir. 1987).

In granting the lien avoidance motion, the Bankruptcy Court determined that Naylor did not have a valid contractors' lien as of April 13, 2006 because he failed to perfect his lien in accordance with Vermont law. Under Vermont law contractors are

entitled to statutory liens against real property. All that is required of a contractor is strict compliance with the procedural steps set forth under Vermont Law. *See* Vt. Stat. Ann. tit. 9, §§ 1921-1925; *see also Goodro v. Tarkey*, 22 A.2d 509, 510 (Vt. 1941); *Piper v. Hoyt*, 17 A. 798, 798-799 (Vt. 1889). Timely procedural compliance with the statute provides diligent contractors with an equity of redemption and a preference over other creditors—a statutory lien. *Woodbury Lumber Co. v. Mcintosh,* 211 A.2d 240, 241-42 (Vt. 1965). The resulting well-perfected lien "will relate back to the time of recording of a notice of lien or 'visible commencement' of work." *In re APC Constr., Inc.*, 112 B.R. at 117.

The necessity of strict compliance with the statute's procedures has been long recognized in Vermont. *See, e.g., Piper v. Hoyt,* 17 A. 798, 798 (Vt. 1889) (requiring strict adherence because "the [statute] provides a special remedy in favor of a particular person . . . ."). More importantly, the lien is a creature of Vermont law and its existence depends entirely on the Vermont statute which created it. *Goodro,* 22 A.2d at 510; *see also Butner*, 440 U.S. at 55. Thus, a contractor who fails to comply with the statute's procedures risks the expiration of his lien. *See, e.g.*, *In re APC Const.*, 112 B.R. at 103 (stating that failure to complete attachment within the statutory window causes the lien to be lost).

The procedures are simple. There are four steps.[3] First, a contractor must make a contract or agreement, whether oral or written, to erect, repair, move, or alter real property. Vt. Stat. Ann. tit. 9, §§ 1921(a). Any contractor who does shall have a lien to secure payment by giving written notice of the lien to the property owner. Vt. Stat. Ann. tit. 9, § 1921. Such lien will cover the portion of the contract price remaining unpaid at the time notice is given. *Id*.

Second, the contractor must file a written memorandum with the town clerk, asserting his claim for payment and charging the property with a lien as of the visible commencement of his work at the property. Vt. Stat. Ann. tit. 9, § 1923.

Third, within 180 days of filing the memorandum, a contractor must (1) commence an action, either on the contract or the lien statute, *and* (2) cause such property to be attached thereon. Vt. Stat. Ann. tit. 9 §, 1924. If the contractor receives a judgment in the action, the record of judgment must contain a brief notation of the contract on which the judgment is based. *Id*.

Fourth, the contractor must record a certified copy of the judgment with the town clerk within five months of the date such judgment was issued. Vt. Stat. Ann. tit. 9, § 1925. The effect

---

[3] For a thorough analysis of Vermont's contractors' lien statute see *The Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc.*, (*In re the Rainbow Trust*), 216 B.R. 77, 83 (B.A.P. 2d Cir. 1997).

of recording the judgment is to encumber the attached property
for the amount due on such judgment as if it had been mortgaged
for the payment thereof. *Id.* Then, and only then, shall a
contractor have the right to foreclose the lien as if it were a
mortgage. *Id.*

The effect of an intervening bankruptcy on a contractors'
lien differs with respect to the action taken on the lien:
perfection or enforcement. If a bankruptcy intervenes after
judgment has been issued on the lien, then the automatic stay
provisions of the bankruptcy code do not bar the post-petition
perfection of the lien by recording the existing judgment. *In re
APC Constr., Inc.*, 112 B.R. at 119-120. On the other hand, if
the bankruptcy intervenes prior to judgment in an action to
enforce the lien then the automatic stay provisions of the
bankruptcy code bar the post-petition enforcement of the lien and
toll the statutory period for enforcement. *Id.; see also In re
Morton,* 866 F.2d at 564 (discussing the automatic stay provisions
of the bankruptcy code with respect to statutory lien
enforcement).

The dispositive inquiry is whether Naylor perfected his lien
by recording his judgment within the five month window set forth
in section 1925. Naylor admits that he has not yet recorded his
judgment. *See* (Br. Of Appellant 13) ("Naylor has not yet
recorded his Judgment"). Therefore, Naylor failed to "strictly

adhere" to the statute's procedures and his lien has expired. *In re APC Const.*, 112 B.R. at 125.

Naylor raises two additional questions, however, regarding the Bankruptcy Court's construction of Vt. Stat. Ann. tit 9, § 1925 that this Court will address.

First, Naylor questions whether the Bankruptcy Court misconstrued section 1925 by failing to read into section 1925 the finality requirement of Vt. Stat. Ann. tit. 12, § 2904. Naylor argues that because his judgment was not, and is still not final, the section 1925 five-month window for recording his judgment has not yet been triggered. *Id*. Section 1925 does not contain the word "final." Neither do any of the other sections of Vermont's Miscellaneous Lien Statute, Vt. Stat. Ann. tit. 9, §§ 1921–1925. It is a cardinal rule of statutory construction that courts will not presume something that a Legislature has not plainly stated in a statute. *See Swett v. Haig's Inc.*, 663 A.2d 930, 932 (Vt. 1995) (stating that when construing a statute courts "presume the Legislature intended the plain, ordinary meaning of the statute."); *see also In re Ahokas*, 361 B.R. 54, 61 (D. Vt. 2007) (" In general [the court] will not read something into a statute that is not there unless it is necessary to make the statute effective.") (citation omitted).

Furthermore, courts have consistently held that the judgment referred to in section 1925 need not be final. *See e.g., The Official Unsecured Creditors' Comm. of the Rainbow Trust v. Moulton Constr., Inc.*, (*In re the Rainbow Trust*), 216 B.R. 77, 83 n.5 (B.A.P. 2d Cir. 1997) ("Pursuant to § 1925 . . . the Judgment, [referred to therein,] was not required to be either final or contain a notation as to the date of its finality."); *see also In re Ahokas*, 361 B.R at 65 n.9 (same). Thus, for the purposes of section 1925, the judgment is not required to be final.

Even assuming, *arguendo*, that Naylor's judgment did not become final until the Vermont Supreme Court affirmed it on September 18, 2007, on Naylor's own argument, his window for recording his Judgment has still expired. That window expired on approximately February 18, 2008—five-months from September 18, 2007. But Naylor, by his own admission, has yet to record his Judgment. (Br. Of Appellant 13.)

Second, Naylor questions whether the Bankruptcy Court had the power to consider facts that emerged after April 13, 2006 (the date on which the Debtors filed their Chapter 7 petitions). In principle, Naylor argues that the Bankruptcy Court's determination that his lien had expired prior to April 13, 2006 was "patently erroneous." (Br. Of Appellant 9.) In support of

this argument, Naylor argues that the Bankruptcy Court defied the law, and erroneously considered in its analysis, as fact, the post-April 13, 2006 actions that Naylor took, or did not take, with respect to perfecting his contractors' lien. *Id*. As such, Naylor claims that had the Bankruptcy Court followed the law, it would have determined that he had a valid contractors' lien as of April 13, 2006.

The thrust of Naylor's argument is correct, but his conclusions are wrong. Bankruptcy law regarding exemptions and impairments to real property refers to a specific point in time, and Naylor correctly argues that the point in time, applicable here, was April 13, 2006. *See* (Br. Of Appellant 10) (quoting *White v. Stump*, 266 U.S. 310, 313 (1924)). Nevertheless, the relation back framework of the contractors' lien statute creates a lien that relates back to, and is effective as of, the date on which a contractor "visibly began" his work. *See* Vt. Stat. Ann. tit. 9, § 1925.

The relation back concept, albeit "peculiar," is long and well recognized in Vermont. *See In re APC Const.*, 112 B.R. at 113-117 (discussing at length the workings in bankruptcy of contractors' liens that relate back in time). Vermont law "recognizes [that] a timely perfected contractors' lien will relate back to the time of recording of notice of lien or the

'visible commencement' of work." *Id*. at 112 (citations omitted).

"If a creditor possesses a [pre-petition] interest in property,
and state law establishes a time period for perfection of a lien
based on that interest, the 'lien does not lose its preferred
standing by reason of the fact that it [is] not perfected until
after the commencement of bankruptcy' so long as it is perfected
within the time period established by state law." *Lincoln
Savings Bank v. Suffolk County Treasurer* (*In re Parr Meadows
Racing Ass'n, Inc.*), 880 F.2d 1540, 1546 (2d Cir. 1989) (quoting
*Poly Indus., Inc. v. Mozley*, 362 F.2d 453, 457 (9th Cir.), *cert.
denied*, 385 U.S. 958 (1966). Here, timely perfection would have
related the lien back to as early as April of 2004, the month in
which Naylor visibly commenced work under his contract with the
Debtors.

Even though the Bankruptcy Court considered facts that
actually occurred post-petition, those facts related back to a
pre-petition date by way of the statute's relation back
framework. The analysis is simple; either Naylor perfected his
lien or he did not. If he did, then his lien would have been
effective as of the date he began working. If he did not, then
his lien expired as of the date he began working. The fact of
the matter is that Naylor failed to perfect his lien within the
statutory five-month window. The result of such failure is an

expired lien, and the Bankruptcy Court correctly considered Naylor's post-petition actions in reaching this conclusion. Therefore, Naylor did not have a contractors' lien against the Debtors' property as of April 13, 2006. The Bankruptcy Court correctly concluded the same.

## III.

Having determined that Naylor's lien had expired, the Bankruptcy Court advised that if Naylor were to record his judgment, thereby creating a judicial lien, the Debtors could avoid this lien for impairing their homestead exemption pursuant to 11 U.S.C. § 522(f)(1)(a). For the purposes of bankruptcy, a judicial lien is one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

To create a judicial lien in Vermont, a person who has received a final judgment must record that judgment in any town where real property of the debtor is located. Vt. Stat. Ann. tit. 12, § 2904. If that person had previously attached real property of the debtor in the action in which judgment was rendered, then the recording of that judgment (the judicial lien) will relate back to the date of attachment only if such judgment was recorded within sixty days of its becoming final. Vt. Stat. Ann. tit. 12, § 2902. If not, then the judicial lien becomes

effective as of the date final judgment issued.  Vt. Stat. Ann.
tit. 12, § 2903(a).

With regard to judicial liens in bankruptcy, the bankruptcy
code permits debtors to avoid judicial liens if those liens
impair the debtor's claimed homestead exemption.  11 U.S.C. §
522(f)(1)(a).  However, because Naylor has yet to record his
judgment, the issue of whether his judgment impairs the Debtors'
homestead exemption is not ripe for review. Accordingly, this
Court does not address it.

## IV.

The final issue Naylor raises in his appeal is whether the
Debtors properly refinanced their homestead while it was
encumbered by his contractors' lien?  This question is easily
disposed of by reference to Vermont law.  Vermont law, Vt. Stat.
Ann. tit. 9, § 1923, states that a debtor, or any person whose
property is subject to a contractors' lien, may deed, mortgage,
or otherwise convey the subject property so long as that person
discloses such lien to the vendee or mortgagee in writing or
states the existence of the same in the instrument conveying or
mortgaging such property.  The Debtor's informed their mortgagee,
Aegis, of Naylor's lien prior to refinancing.  Therefore, the
Debtor's lawfully refinanced their home even though it was, as

Naylor phrases it, in "defiance" of Naylor's lien. (Br. Of Appellant 16.)

## Conclusion

For the reasons stated above, the Court **AFFIRMS** the Orders of the Bankruptcy Court. Naylor's Motions for stay are **DENIED** as moot.

DATED at Burlington, in the District of Vermont, this 31st day of March, 2009.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge, U.S. District Court